UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS VICENTE,<br>    Plaintiff,<br><br>v.<br><br>MARC AYOTTE, et al,<br>    Defendants. | Case No. 3:24-cv-844 (OAW) |

## INITIAL REVIEW ORDER

Self-represented plaintiff Luis Vincente, formerly an inmate at Corrigan-Radgowski Correctional Center ("Corrigan"), has filed a complaint naming four Corrigan correctional officers and a Connecticut State Police trooper as the defendants. *See* Compl. ¶¶ 3–9, ECF No. 1. He alleges the correctional officers assaulted him in retaliation for filing a grievance against one of them, and that State Trooper Peluso, who investigated the assault, conspired with the correctional officers to cover up the assault. *See id.* ¶ 1.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity, or officer or employee of a government entity. *See* 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

Upon thorough review, the court orders as follows.

1

I. **FACTUAL BACKGROUND**

The following summary is limited to those facts material to the court's ruling.

Plaintiff was an inmate at Corrigan at all times relevant for this action. *See* Compl. ¶ 10, ECF No. 1. On August 18, 2021, he filed a written complaint with the Warden, alleging that Officer Ayotte had engaged in unspecified misconduct. *See id.* ¶ 16. The following day, August 19, 2021, Officer Ayotte assaulted Mr. Vicente while he was in the shower area, striking him in the face several times, and taking him to the ground while placing him in a "headlock." *Id.* ¶¶ 10–11. Officers Ayotte, Conrad, Poventud, and Mehmet then began to knee and kick Mr. Vicente in the face, head, and body, while he laid on the ground, without resisting, crying out for the officers to stop. *Id.* ¶ 12. Officer Poventud also grabbed and squeezed Plaintiff's genitals. *Id.* ¶ 13. During the assault, which left Plaintiff severely injured, the officers made comments such as, "You wanna write us up, punk," and "stop complaining about us." *Id.* ¶¶ 15, 17. Mr. Vicente sustained lumps, bruises, lacerations to his face, and a broken nose which required surgery. *Id.* ¶ 15.

Trooper Peluso responded to the prison on the day of the assault, and Defendants Ayotte, Conrad, Poventud, and Mehmet ("Correctional Officer Defendants") reported that Mr. Vicente had assaulted them. *Id.* ¶¶ 19–20. Plaintiff reported to Trooper Peluso that Correctional Officer Defendants assaulted him without reason, and he sought their arrest. *Id.* ¶¶ 21–22. Trooper Peluso refused, and (despite Plaintiff's request to do so) failed to secure video evidence captured on a handheld camera when a supervisor and other staff

responded to the assault.  *Id.* ¶¶ 23–25.

Mr. Vicente brings Eighth Amendment excessive force claim and First Amendment retaliation claim against Correctional Officer Defendants.  *See id.* ¶¶ 27–29.  He further raises a conspiracy claim against all Defendants—including Defendant Peluso—alleging that they conspired to "conceal the truth of the 8/19/21 incident."  *Id.* ¶ 26.  Plaintiff seeks both compensatory and punitive damages.  *See generally id.*

## II. DISCUSSION

### A. Eighth Amendment Excessive Force Claim

Plaintiff first raises an Eighth Amendment excessive force claim against Correctional Officer Defendants.  Compl. ¶ 27, ECF No. 1.  The Eighth Amendment of the U.S. Constitution protects against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotations and citations omitted).

In order to state an Eighth Amendment claim for the use of excessive force, an inmate must allege two elements: (1) that the defendant acted with a "subjectively sufficiently culpable state of mind"; and (2) "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions."  *Harris v. Miller*, 818 F.3d 49, 63–64 (2d Cir. 2016) (*per curiam*) (internal quotations and citations omitted).

Officers are liable not only when they use excessive force themselves, but also when they fail to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (recognizing that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from . . . other law enforcement officers in their presence.").

Plaintiff has alleged sufficient facts to sustain a claim for Eighth Amendment excessive force against Correctional Officer Defendants.

As for the subjective element, Plaintiff sufficiently has alleged that Correctional Officer Defendants used force "maliciously and sadistically to cause harm." *Bowman v. Dilworth*, No. 3:20-cv-756 (CSH), 2021 WL 2551142, at *7 (D. Conn. June 22, 2021) (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). According to his allegations, Plaintiff did not resist at any point during the incident. *See* Compl. ¶ 14, ECF No. 1. Instead, he was outnumbered. *See id.* ¶ 12 (alleging that all four Correctional Officer Defendants were assaulting Plaintiff). Moreover, his allegations that he was discouraged from filing complaints, *id.* ¶ 17, suggest that force was not applied in a good-faith effort to "maintain or restore discipline." *Wright v. Goord*, 554 F.3d 225, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992)).

As for the objective element, the use of force was sufficiently serious—it resulted in Plaintiff's broken nose, which needed to be surgically reconstructed. *Bragdon v. Baccus*, No. 3:20-CV-258 (JAM), 2020 WL 2113606, at *1–2 (D. Conn. May 4, 2020) (citing *Harris*, 818 F.3d at 63–64) (neck and head injuries were sufficiently serious for

4

excessive force claim).  "The malicious use of force to cause harm" may constitute a *per se* violation of the Eighth Amendment.  *Seweid v. Cnty. of Nassau*, No. 21-cv-03712(JMA)(AYS), 2024 WL 693981, at * 7 (E.D.N.Y. Feb. 20, 2024) (quoting *Harris*, 818 F.3d at 64).  Thus, Plaintiff's complaint likely would have survived review upon his initial allegations of Correction Officer Defendants' malicious intent.  *See Hudson*, 503 U.S. at 9–10.  The argument for preserving this claim is only strengthened by the nature of injuries that Plaintiff sustained.  *See Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) ("Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.").

Accordingly, the court finds that Plaintiff sufficiently has raised an Eighth Amendment claim for use of excessive force to survive this initial review.

    **B.**    **First Amendment Retaliation Claim**

Plaintiff next alleges a First Amendment retaliation claim against Correctional Officer Defendants who allegedly assaulted him after filing a grievance.  *See* Compl. ¶ 28, ECF No. 1.  The court must approach this claim "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).  Retaliation claims stated in "wholly conclusory terms" are insufficient.  *Id.* (citations omitted).  To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2)

5

that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Plaintiff alleges that he filed a grievance against Defendant Ayotte on August 18, 2021.  Compl. ¶ 16, ECF No. 1.  Filing an inmate grievance constitutes a protected First Amendment activity and satisfies the first element of Plaintiff's retaliation claim.  *See Dolan*, 794 F.3d at 294 (holding that "retaliation against a prisoner for pursuing a grievance violates the right . . . guaranteed by the First and Fourteenth Amendments").

The alleged assault against Plaintiff constitutes an "adverse action" and satisfies the second element of Plaintiff's retaliation claim because it would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *McGraw v. Doe*, No. 3:23-CV-229(SVN), 2023 WL 5894727, at *3 (D. Conn. Sept. 11, 2023) (quoting *Brandon*, 938 F. 3d at 40).  Plainly, physical assault has a deterrent effect on inmates seeking to exercise their rights.  *See, e.g.*, *Salgado v. NYS Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1108(RJA)(MJR), 2016 WL 6311296, at *3, *8 (W.D.N.Y. Sept. 15, 2016) (concluding that slamming the cell window on plaintiff's finger and beating him constituted adverse action); *Rivera v. Goord*, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000) (holding that physical assault could "chill a person of ordinary firmness from continuing to engage in his First Amendment activity").

As to the causal element, Plaintiff's allegation that Correctional Officer Defendants physically assault him the day after he filed his complaint against Defendant Ayotte sufficiently demonstrates a causal connection. *See McGraw*, 2023 WL 5894727, at *4 (holding that causal connection could be established by "showing that protected activity was close in time to the adverse action."). Moreover, Correctional Defendants allegedly said to Plaintiff: "you wanna write us up punk" and "stop complaining about us," Compl. ¶ 17, ECF No. 1, which lends further support to the argument that there is a causal connection between the assault and the protected First Amendment activity. *See Whipper v. Green*, 2023 WL 5435892, at *5 (D. Conn. Aug. 23, 2023) (finding the defendants' "repeated warnings" to the plaintiff about not engaging in protected First Amendment activity to be supportive of finding causal connection).

The court finds that Plaintiff sufficiently has raised a First Amendment Claim for retaliation against the Correctional Officer Defendants.

## C.  **Conspiracy Claims**

Lastly, Plaintiff asserts a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. §§ 1983, 1985. *See* Compl. ¶¶ 2, 29, ECF No. 1 (citing statutes as the basis for jurisdiction).

"A claim of conspiracy cannot be grounded on vague and conclusory allegations" under either § 1983 or § 1985. *Forte v. City of New York*, No. 16-CV-560 (VSB), 2023 WL 6259652, at *10 (S.D.N.Y. Sept. 26, 2023), *appeal dismissed sub nom. Forte v. Tierny*, No. 23-7716, 2024 WL 4762976 (2d Cir. May 28, 2024). Moreover, a claim of

7

conspiracy is viable only when the plaintiff sufficiently alleges a substantive violation. *See Gaston v. Gavin*, 1998 WL 7217, at *5 (S.D.N.Y. Jan. 8, 1998) (citing *Singer v. Fulton Cnty.*, 63 F.3d 110, 119 (2d Cir. 1995)).

### i. 42 U.S.C. § 1983 Conspiracy Claim

"To prove a claim of conspiracy under 42 U.S.C. § 1983, a plaintiff must show: '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Pal v. Canepari*, No. 3:20cv13 (MPS), 2023 WL 2712371, at *22 (D. Conn. Mar. 30, 2023) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  Put differently, Plaintiff must raise allegations that demonstrate that the "defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* (quoting *Falls v. (Police Off.) Detective Michael Pitt*, No. 16-cv-8863 (KMK), 2021 WL 1164185, at *58 (S.D.N.Y. Mar. 26, 2021)).

The Correctional Officer Defendants were acting in their official capacities as members of the Connecticut Department of Correction when they allegedly violated Plaintiff's constitutional rights.  *See* Compl. ¶¶ 4–7, ECF No. 1.  "The intracorporate conspiracy doctrine provides that officers, employees, and agents of a single corporate entity are legally incapable of conspiring together." *Jones v. Blekis*, No. 23-CV-1641, 2024 WL 230288, at *6 (D. Conn. Jan. 22, 2024) (citing *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)).  However, there is an exception to this doctrine "when individuals are 'pursuing personal interests wholly separate and apart from the entity.'" *Jordan v. Dep't*

*of Corr.*, No. 3:23-cv-855 (VAB), 2023 WL 6541585, at *11–12 (D. Conn. Oct. 6, 2023) (quoting *Ali v. Connick*, 136 F. Supp. 3d 270, 282–83 (E.D.N.Y. 2015)).  Under the "personal stake exception," to sufficiently allege that individuals pursued personal interests wholly separate and apart from the entity, Plaintiff must show they worked against, not for departmental interests.  *See id.* at *12.  Simple allegations that the defendants were motivated by personal bias are insufficient to support the exception*.  See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009).

The personal stake exception applies to the Correctional Officer Defendants.  They falsely reported to Defendant Peluso that Plaintiff assaulted them in an effort to cover up their own violent retaliation against Plaintiff.  Courts have applied the personal stake exception "in cases where officers were alleged to have exercised excessive force and then conspired to cover-up this alleged use of force." *Mazyck v. Keller*, 531 F. Supp. 3d 630, 647 (W.D.N.Y. 2021) (citing *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 648 (S.D.N.Y. 2020)); *see also Brown v. Annucci*, No. 19 CV 9048 (VB), 2021 WL 860189, at *10–11 (S.D.N.Y. Mar. 8, 2021) (applying the exception after plaintiff alleged that defendants "us[ed] excessive force and then agree[d] to cover up the alleged assault by manipulating or destroying evidence").  Here, the Correctional Officer Defendants were not working for departmental interests when they allegedly lied to Defendant Peluso about the altercation.  *See* Compl. ¶ 20, ECF No. 1 ("[T]he defendants conspired to report, [falsely], to defendant trooper Peluso, that the plaintiff has assaulted all four . . . officers.").  In addition, the circumstances suggest that they were acting in their own personal

interests to cover up a violent attack that they perpetrated. Thus, the intra-corporate conspiracy doctrine does not shield the Correctional Officer Defendants from this claim.

With respect to the four Correctional Officer Defendants, Plaintiff has met the minimum pleading requirements to allege a conspiracy to violate his civil rights. To the first factor, Plaintiff raises allegations that the Correctional Officer Defendants had an "express or tacit" agreement because they acted together both when they attacked Plaintiff, *id.* ¶ 12, and when they made a false report to Defendant Peluso, *id.* ¶ 20. *Forte*, 2023 WL 6259652, at *10 ("A plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003))). To the second factor, the Correctional Officer Defendants acted in concert when "[a]ll four (4) defendant officers . . . began to strike plaintiff in his face, head and body[.]" Compl. ¶ 12, ECF No. 1. To the third factor, repeatedly striking, kneeing, and kicking an unresisting inmate constitute overt acts meant to cause harm to Plaintiff.

Plaintiff also plausibly alleges a conspiracy claim against Defendant Peluso. While Defendant Peluso was not present during the assault, he was called to Corrigan the same day and soon after interviewed Plaintiff. *See id.* ¶¶ 19–21. At this initial review stage, Plaintiff's allegations that Defendant Peluso "refused, without reason, to even consider" pursuing charges against the correctional officers for assault, *id.* ¶ 23, and that he "refused to secure" camera footage of the incident while "acting together with the defendant correctional officers," *id.* ¶ 25, is sufficient to support a conspiracy claim.

10

Plaintiff alleges an agreement between Defendant Peluso and the Correctional Officer Defendants to violate his constitutional rights by failing to adequately preserve a video recording of the assault. *Id.* ¶¶ 25–26. Defendant Peluso's failure to secure this evidence after Plaintiff "specifically asked" him to do so on the day of the incident, *id.* ¶ 24, alleges an overt act to prevent Plaintiff from proving his allegations against the Correctional Officer Defendants. *See DeMeo v. Kean*, 754 F. Supp. 2d 435, 447 (N.D.N.Y. 2010) (denying summary judgment where defendants allegedly conspired to destroy video evidence of an assault); *see Terry v. Hulse*, No. 16-CV-252 (KMK), 2018 WL 4682784, at *13 (S.D.N.Y. Sept. 28, 2018) (denying summary judgment where defendants allegedly agreed to dispose of photographic evidence of correction officers assaulting an inmate). Therefore, Plaintiff's conspiracy claim also may proceed against Defendant Peluso.

        ii.    <u>42 U.S.C. § 1985 Conspiracy Claim</u>

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of the citizen of the United States." *Id.* (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

11

Plaintiff's § 1985 conspiracy claim is dismissed. "To establish a claim under § . . . 1985(3)[,] a plaintiff must allege discrimination or conspiracy to discriminate that was motivated by racial animus." *Cano v. City of New York*, No. 23-cv-3733(AS), 2024 WL 3520471, at *3 (S.D.N.Y. July 24, 2024) (citing *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339, 341 (2d Cir. 2000)). Plaintiff does not allege any discrimination, nor does he argue that any conspiracy was motivated by race. A single relevant allegation goes to the alleged "discriminatory intent" of the defendants. *See* Compl. ¶ 26, ECF No. 1. Nonetheless, this "conclusory" allegation is not sufficient to sustain Plaintiff's § 1985 claim.

### D.  Personal involvement

Plaintiff sues all Defendants for damages in their individual capacity. *See id.* ¶¶ 4–8. A plaintiff seeking monetary damages from a defendant must allege facts that establish that defendant's personal involvement in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Plaintiff has sufficiently alleged that each Correctional Officer Defendant was personally involved in violating Plaintiff's First and Eighth Amendment rights and conspiring with one another to violate those rights.

In addition, while Defendant Peluso was not personally involved in violating Plaintiff's First and Eighth Amendment rights, Plaintiff has alleged sufficient facts showing that he was personally involved in conspiring with the other four defendants to

violate Plaintiff's First and Eighth Amendment rights. Consequently, Plaintiff may seek monetary damages against all defendants in their individual capacity.

Accordingly, the case will proceed for further development of the record.

### III.     ORDERS

Consistent with the foregoing, the court enters the following orders:

(1) Plaintiff may proceed on (i) his Eighth Amendment excessive force claim against defendants Ayotte, Conrad, Poventud, and Mehmet in their personal capacities; (ii) his First Amendment retaliation claim against defendants Ayotte, Conrad, Poventud, and Mehmet in their personal capacities; and (iii) his 42 U.S.C. § 1983 conspiracy claim against Defendants Ayotte, Conrad, Poventud, Mehmet, and Peluso in their personal capacities. All other claims are DISMISSED.

(2) The Clerk's Office shall please verify the current work address for Defendants Ayotte, Conrad, Poventud, and Mehmet with the DOC Office of Legal Affairs, and shall please verify the current work address for Defendant Peluso with the Connecticut State Police, mail to them at their confirmed address a waiver of service of process request packet containing the complaint (ECF No. 1) and this order within **twenty-one (21) days** of this order, and also shall please report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendants fail to return the waiver request, the Clerk's Office shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on any such defendant, and that defendant shall be required

to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk's Office shall please send a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  Defendants also may include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests shall not be filed with the court.  Interim discovery deadlines established by the parties may be amended by their agreement without the need to seek court approval, so long as such extensions to not delay the deadline for completion of all discovery.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Electronic Filing Program ("The Program") when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 2nd day of December, 2024.

                                                /s/
                                    Omar A. Williams
                                    United States District Judge